**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CRANSTON FIREFIGHTERS, IAFF
LOCAL 1363, AFL-CIO, on its own behalf
and on behalf of its members, and
INTERNATIONAL BROTHERHOOD OF
POLICE OFFICERS, LOCAL 301,
AFL-CIO, on its own behalf and on behalf
of its members
                    Plaintiffs,


            v.                              C.A. No. 16-130-ML


GINA RAIMONDO, in her capacity as
Governor of the State of Rhode Island,
SETH MAGAZINER, in his capacity as
the General Treasurer of the State of Rhode
Island, the EMPLOYEES' RETIREMENT
SYSTEM OF RHODE ISLAND, by and
through Seth Magaziner, in his capacity
as Chairperson of the Retirement Board,
and Frank J. Karpinski, in his capacity as
Executive Director of the Retirement Board,

and

CITY OF CRANSTON, by and through its
Finance Director, Robert F. Strom, and its
Treasurer, David Capuano,
                    Defendants.


**ORDER AND MEMORANDUM**

     The plaintiffs in this action, Cranston Firefighters, IAFF

Local 1363, AFL-CIO (the "Firefighters") and International

Brotherhood of Police Officers, Local 301-CIO (the "Police

Officers," together with the Firefighters, the "Unions" or

"Plaintiffs"), have brought claims (the "Complaint") against the

1

State of Rhode Island (the "State"), the Employees' Retirement System of Rhode Island ("ERSRI"), and the City of Cranston, (the "City," together with the State and ERSRI, "Defendants"), related to the implementation of the Rhode Island Retirement Security Act of 2011 ("RIRSA"), as amended by Rhode Island Public Laws Chapter 141, Article 21, "Relating to Pensions" (the "2015 Amendments"). The matters before the Court are two separate motions to dismiss the Complaint filed by the State (ECF No. 7) and by the City (ECF No. 13). After considering the parties' pleadings and conducting a hearing on the motions on October 6, 2016, the Court issues the following order and memorandum.

## I.    Factual Background

### A. Collective Bargaining Agreements

As set forth in the Complaint, the City and Local 1363 are parties to a collective bargaining agreement[1] ("CBA"), pursuant to which "employees hired after July 1, 1995 will be enrolled in the 'State of Rhode Island Optional Twenty (20) Year Retirement Service Allowance,' R.I.G.L. 45-21.2-22." Complaint ¶18. The CBA provides, *inter alia*, that employees enrolled in the pension plan

---

[1]

At the time the Complaint was filed, the then current CBA governed the period July 1, 2013 through June 30, 2016. Complaint ¶16. According to the Complaint, during the period from July 1, 2008 through June 30, 2011, the City and the Union agreed to provide for a new CBA governing the period from July 1, 2011 through June 30, 2013. Complaint ¶17.

will accrue 2.5% per credited year of service, up to 75% for thirty years of credited service; that the pension payment will be based on the employee's weekly salary, longevity pay, and holiday pay, based on the employee's highest year of earnings; and that all retired employees' pension payments will automatically escalate by 3%, compounded each year following the year of retirement. Complaint ¶¶19-21. Similarly, Section 2.28.050 of the City of Cranston's Code of Ordinances provides for an accrual of 2.5% per credited year of service up to a maximum of 75%. Complaint ¶25.

The City is also party to a CBA with Cranston Police, which governs employment terms and conditions for all full-time Cranston police officers (up to, and including, the rank of Captain). Complaint ¶31. The Police CBA for the period from July 1, 2014 through June 30, 2017 provides for, *inter alia*, fixed annual COLAs of 3% for all employees retiring after execution of the Police CBA. Complaint ¶32. The Police CBA requires that no changes may be made to current benefits without a written agreement between the City and the IBPO [International Brotherhood of Police Officers]. Id. According to the Complaint, the Plaintiff Unions have filed grievances against the City for allegedly violating provisions of the respective CBAs. Complaint ¶¶24,34. Those grievances are either pending or held in abeyance

pending the outcome of the instant case. Id.

### B. The Cranston Ordinances

The Plaintiffs in this case claim contractual rights to retirement benefits under two provisions of the City of Cranston's Code of Ordinances (the "City Ordinances"), Sections 2.28.050 and Section 2.20.05, respectively, which have remained "substantially the same since 1995", Complaint ¶¶27, 33. With respect to retirement benefits, Section 2.20.050 provides, *inter alia,* that police officers enrolled in the Rhode Island pension plan will accrue 2.5% per credited year of service (up to 75%); the Section also includes a 3% annual COLA. Pension benefits are calculated on weekly salary, longevity pay, and holiday pay. Complaint ¶¶35-36. Similar provisions in Section 2.28.050 (related to the Firefighters) include, *inter alia*, a 2.5% accrual per credited year of service up to 75%. Complaint ¶¶25-26. Plaintiffs allege that the City is currently in violation of both City Ordinances. Complaint ¶¶28, 38.

### C. The 1996 Special Legislation

According to the Complaint, in 1993, employees of the City's Fire and Police Departments were participants in the City's municipal pension plan. Complaint ¶49. At that time, the City was suffering from "a severe operating deficit" and the municipal pension plan was "critically underfunded." Complaint ¶50. In

4

1995, after negotiating with the City, the Unions agreed to permit new hires and employees with five or fewer years of service to transfer into the State Retirement System ("SRS"). Complaint ¶¶54, 55. Because the SRS did not provide the same benefits as the CBAs, the Unions, the City, and SRS representatives negotiated certain changes that became law by special legislation in 1996. As a result, Section 45-21.2-14 of the Rhode Island General Laws was amended to increase employee contributions for members of the Cranston Fire and Police Departments from 7% to 10%; to provide higher "final compensation" when calculating their pension benefits; and to provide them a 3% COLA. Complaint ¶63.

The Cranston City Council also adopted the provisions of R.I. Gen. Laws § 45-21.2-22, which permitted public safety employees to retire after twenty years of service (regardless of age) and included a retirement allowance of 2.5% of final compensation multiplied by years of service, up to 75% of final compensation. Complaint ¶¶62, 64. Pursuant to Sections 45-21.2-17.2 and 45-21.2-17.3, Cranston Firefighters and Police offices becoming members under the State retirement system waived and renounced all accrued rights and benefits of any other pension or retirement system supported wholly or in part by a municipality if the pension or retirement system was in existence prior to

July 1, 1995. Complaint ¶65. The Plaintiffs now take the position that Section 45-21.2-1 et seq., as amended in 1996, "creates a contract between the State and Plaintiffs." Complaint ¶66.

**D. Rhode Island Retirement Security Act of 2011 ("RIRSA")**

RIRSA was enacted by the Rhode Island General Assembly in 2011 to address the issue of unfunded municipal pension liabilities. Id. at ¶¶67, 68. Some of the changes impacting fire fighters and police officers within the Municipal Employees' Retirement System ("MERS") include the following: it reduced the factor to calculate an employee's benefit from 2.5% per year of service to 2% per year of service after July 1, 2012; it changed the Final Average Compensation ("FAC") from the highest year to the highest five consecutive annual salaries; it increased the twenty-year minimum service requirement to twenty-five; it added a minimum retirement age of fifty-five; and it permanently reduced or delayed the amount of COLAs [cost-of-living adjustments]. Complaint ¶69 a-j. In sum, RIRSA reduced, on a prospective basis, the value of benefit plans for certain safety employees, including Cranston fire fighters and police officers.

As set forth in the statute, in enacting RIRSA, the State sought to address the "fiscal peril related to the growing and substantial unfunded pension liabilities," that might lead Rhode Island communities to file for bankruptcy protection which, in

turn, had already been shown to jeopardize public service pensions. Complaint ¶68.  On their part, the Plaintiffs assert, without further factual support, that "the City of Cranston MERS [Municipal Employees Retirement System] for firefighters and police officers was, at all relevant times, well-funded." Complaint ¶77. The Plaintiffs now claim that they have suffered irreparable injuries as a direct result of RIRSA and its amendments. Complaint ¶1.

### E. Litigation Arising from Pension Reform

### 1. The CPRAC Case

In early 2012, the Plaintiffs, together with several other municipal employee unions, filed lawsuits[2] in Rhode Island state court against the State and ERSRI [Employees' Retirement System of Rhode Island], alleging that RIRSA violates the Contracts Clause, Takings Clause, and Due Process Clause of the Rhode Island Constitution by reducing the Plaintiffs' pension benefits and by substantially impairing their contracts. Complaint ¶78.

In April 2013, the Cranston Police Department Retirees Association, Inc. and the Local 1363 Retirees Association brought suit against the City, alleging that 2013 changes to certain ordinances (the "2013 Ordinances") of the Cranston City Code —

---

[2]

Woonsocket Fire Fighters IAFF Local 732, et al. v. Chafee, C.A. No. PC-12- ___ (ECF No. 7-1) and City of Cranston Police Officer, et al. v. Chafee, C.A.No. PC-12-3169 (ECF No. 7-2).

which, *inter alia*, suspended the prior 3% compounded COLA for a period of ten years — violated the Contract Clause of the United States Constitution and the Rhode Island Constitution. <u>Cranston Police Retirees Action Committee v. City of Cranston</u>, C.A. No. KC-13-1059 (ECF No. 17-2) ("CPRAC"). Eventually, the case was settled, affording those plaintiffs who elected to exclude themselves from the settlement agreement an opportunity to sue the City of Cranston.

CPRAC promptly filed suit against the City, which, after a thorough discovery period, culminated in a six-day non-jury trial. <u>Id.</u> On July 22, 2016, the Rhode Island state court rendered a decision in favor of the City and concluded that (1) in accordance with the respective CBAs under which they retired, members of CPRAC had a vested right to 3% compounded COLAs and that "the 3% compounded COLAs are contractual obligations, the impairment of which is subject to contract clause scrutiny," <u>CPRAC</u> at 24; (2) the 2013 Cranston Ordinances constituted a substantial impairment of the contract between members of CPRAC and the City, <u>id.</u> at 29; (3) the 2013 Ordinances were passed for a significant and legitimate public purpose, <u>id.</u> at 35; and (4) the 2013 Ordinances were "reasonable and necessary," <u>id.</u> at 45. Accordingly, the state court concluded that the 2013 Ordinances did not violate the contract clauses of either the Rhode Island

or the United States Constitutions. Id. The court also dismissed
CPRAC's breach of contract claim for lack of standing and denied
CPRAC's request for injunctive relief. The state court's decision
is currently on appeal before the Supreme Court of Rhode Island.

### 2. The Class Action Settlement

In 2014, Plaintiffs filed separate lawsuits[3] in Rhode Island
state court against the State and the City of Cranston, again
asserting that RIRSA violates the Rhode Island Constitution's
Contracts Clause, Takings Clause, and Due Process Clause.
Plaintiffs' 2014 lawsuits were consolidated with several other
lawsuits challenging RIRSA and/or other changes to retirement
benefits made in 2010 and 2011. After a settlement was reached in
most of the cases, the settling parties filed a class action
complaint for settlement purposes. Rhode Island Public Employees'
Retiree Coalition v. Raimondo, PC-2015-1468.

On April 13, 2015, the State and counsel for several unions
and retiree groups involved in the state court litigation filed a
joint motion for settlement, in which Cranston Police and
Cranston Fire did not join. Complaint ¶85. The terms of the
settlement agreement (the "Settlement Agreement") were "nearly

---

3

    Cranston Firefighters, IAFF Local 1363, AFL-CIO v. Chafee and
City of Cranston, C.A. No. PC 14-4343 (ECF No. 7-3); International
Brotherhood of Police Officers, Local 301, AFL-CIO v. Chafee and
City of Cranston, C.A. No. PC 14-4768 (ECF No. 7-4).

identical to the 2015 Amendments;" the Settlement Agreement itself was contingent on the General Assembly's passing an amendment to RIRSA. Complaint ¶86. Pursuant to the Settlement Agreement, the parties agreed to be bound by the judgment entered by the state court and to be foreclosed from mounting any further challenges to RIRSA and/or certain other legislative retirement changes. Complaint ¶87. In addition, the parties agreed not to "directly or indirectly, propose, support, encourage and/or advocate that any other person, firm or entity do anything or refrain from doing something that a party to this Settlement Agreement would be prohibited from doing or refraining from doing hereunder." The parties also agreed not to "support (financially or otherwise)" any challenges to RIRSA and related legislative amendments "pursued by any non-settling party." Complaint ¶87. The plaintiff class was defined as

> "[a]ll persons (and/or their beneficiaries who, on or before July 1, 2015, are receiving benefits or are participating in the State Employees, Teachers or Municipal Employees' retirement plans administered by ERSRI [Employees' Retirement System of Rhode Island] and all future employees, excepting only those individuals who on July 1, 2015 are participating in a municipal retirement system administered by ERSRI for municipal police officers in any municipality and/or for fire personnel of the City of Cranston."

The Plaintiff Subclasses included

> "[a]ll retired members and beneficiaries of retired members who retired on or before June 30, 2015, who are receiving a retirement benefit under ERS or any MERS

unit." State's Exhibit G at 1-2 (ECF No.7-7 p. 2).

The plaintiffs' motion for class certification and notice was granted and a fairness hearing was held over a five-day period in May 2015. It is undisputed that retired Cranston police officers and firefighters elected not to testify at the related fairness hearing. Complaint ¶89. On June 9, 2015, the Rhode Island state court issued a decision in which it confirmed the certification of the plaintiff classes and overruled any objections to the Settlement Agreement (including an objection to the lack of an opportunity to opt out of the settlement). Complaint ¶95.

On July 8, 2015, after the 2015 Amendment had passed, the state court issued a final judgment, which became binding on all class members. Complaint ¶97. Although Cranston Fire and Cranston Police retirees did not participate in the settlement, they were included in the plaintiff class and subject to the benefits of the 2015 Amendments. Subsequently, various retirees[4] took an appeal from the judgment, which is currently pending in the Rhode Island Supreme Court.

---

4

    It appears that, although certain retirees filed an appeal from the judgment, retired Cranston firefighters and police officers (who were members of the class and benefitted from the Settlement Agreement) did not.

**F. The 2015 RIRSA Amendments**

The 2015 Amendments to RIRSA, enacted by the General Assembly on June 30, 2015, provide, *inter alia*, a one-time COLA for certain retirees, a one-time stipend of $500 for retirees, a more nuanced system of calculating COLAs for pension plans less than 80% funded, and full retirement benefits for police and firefighters at age 50 with 25 years of service, or at any age with 27 years of service. Complaint ¶81. On July 17, 2015, in light of the 2015 Amendments, which increased pension benefits for the state court plaintiffs from those originally provided in RIRSA, the State filed a motion to dismiss the Plaintiffs' 2014 law suits as moot. The Plaintiffs did not object, having previously acknowledged that RIRSA no longer existed by virtue of the 2015 Amendments. The case was dismissed as moot[5] on August 21, 2015. Complaint ¶¶82, 83, 84.

## II. Procedural History

On March 16, 2016, the Unions filed a four-count complaint (the "Complaint"), alleging (Count I) that RIRSA and the 2015 Amendments "substantially impair Plaintiffs' contract rights" under the Contracts Clause of the United States Constitution; (Count II) that RIRSA and the 2015 Amendments deprive them of their constitutionally protected property and liberty interests

---

[5]

As Plaintiffs note, the case was dismissed without prejudice.

12

under the Due Process Clause of the Fourteenth Amendment; and (Count III) that RIRSA and the 2015 Amendment constitute a regulatory taking of the Plaintiffs' property rights without just compensation under the Takings Clause of the Fifth Amendment. In addition, the Plaintiffs seek a declaration from this Court that RIRSA and the 2015 Amendments are unconstitutional, void, and unenforceable as applied to Plaintiffs; and (Count IV) that the 2015 Settlement Agreement cannot prohibit or prevent "Retired Cranston Public Safety Officers from joining active public safety offers as Plaintiffs, or interested parties, in this action." According to the Complaint, "[t]he Unions file this complaint on behalf of, and with the express permission of, their bargaining unit members." Complaint ¶8.

On June 7, 2016, the State filed a motion to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 7).

The City filed its motion to dismiss the Complaint on June 27, 2016 (ECF No. 13), relying on the doctrine of abstention as stated in <u>Texas v. Pullman Co.</u>[6] and <u>Colorado River Water</u>

---

[6]
    <u>Railroad Commission of Texas v. Pullman Co.</u>, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Conservation District v. United States.[7] The City requested that this Court either dismiss the Complaint or stay further proceedings until final adjudication of the ongoing Rhode Island Superior Court litigation in Cranston Police Retirees Action Committee v. City of Cranston, KC-13-1059.

On July 22, 2016, the Plaintiffs filed objections to both motions to dismiss the Complaint (ECF Nos. 15 and 16), to which the City responded with a reply on September 2, 2016 (ECF No. 17) and the State filed a reply on September 2, 2016 (ECF No. 18).

On October 6, 2016, this Court conducted a hearing on the Defendants' motions to dismiss the Complaint at which the parties had an opportunity to make their arguments and answer the Court's questions.

## III. Standard of Review

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1). A motion to dismiss for failure to state a claim upon which relief may be granted is governed by Fed. R. Civ. P. 12(b)(6). If a motion is brought under both 12(b)(1) and 12(b)(6), "a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." De La Cruz v. Irizarry, 946 F.Supp.2d 244, 249

---

[7]  Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

(D.P.R. April 13, 2013)(quoting <u>Northeast Erectors Ass'n of BTEA</u> <u>v. Secretary of Labor, Occupational Safety & Health Admin.</u>, 62 F.3d 37, 39 (1st Cir.1995) (citing 5A Charles Wright & Arthur Miller, <u>Federal Practice and Procedure</u> § 1350, at 210 (1990)).

The standard of review accorded a dismissal under either Rule 12(b)(1) or 12(b)(6) is "similar." <u>Murphy v. United States</u>, 45 F.3d 520, 522 , the Court must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts as true, and giving the plaintiff the benefit of all reasonable inferences. <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d 18 (1st Cir. 2002). In order to withstand a motion to dismiss, a claim "must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 72-73 (1st Cir. 2012)(citations omitted). The complaining party must include "factual content that allows the court to draw a reasonable inference" in the pleader's favor. <u>Id.</u> "If, under any theory, the allegations are sufficient to state a cause of action in accordance with the law," the motion to dismiss must be denied. <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 700 (1st Cir.1994). The Court ignores, however, "statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action-elements." <u>Schatz v. Republican</u> <u>State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012). In

addition, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir.2007).

Although the Court generally may not consider documents outside of the complaint unless it converts the motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment, it may make an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The Court may also consider materials outside the pleadings on a Rule 12(b)(1) motion. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

## IV.  The Parties' Contentions

### A.    The State's Position

With respect to Count IV, the State asserts that (1) the Union Plaintiffs lack standing to assert the rights of retirees who are not members of their respective associations; and (2) the Plaintiffs' claim is barred by the doctrine of *res judicata* because the issue raised in this litigation was previously considered and decided by the Rhode Island state court in the underlying class action (resulting in a settlement to which the retirees were parties). In addition, the State argues that Counts

I-III should be dismissed because the "Plaintiffs cannot establish any contractual right to pension benefits as they existed prior to the enactment of RIRSA." State's Mem. at 3 (ECF No. 7).

### B.  The City's Position

The City notes that Plaintiffs' constitutional claims against the City are based on the contention that the Plaintiffs have contractual and otherwise constitutionally protected rights to certain retirement benefits pursuant to various CBAs, sections of the Cranston Code of Ordinances, and/or R.I. Gen. Laws §45-21.2-1. According to the City, at the time the instant motions to dismiss the Complaint were briefed by the parties, the same claims under the same Ordinances and identical CBAs were being litigated in Rhode Island state court. City's Mem. at 2, referencing Cranston Police Retirees Action Committee v. City of Cranston ["CPRAC"], KC-13-1059. (ECF No. 13-1). The Court notes that on July 22, 2016, the Rhode Island state court issued a decision in which it determined that the 2013 Cranston City Ordinances at issue in both cases did not violate the Contract Clauses of either the Rhode Island or United States Constitutions. The Rhode Island state court further determined that CPRAC lacked standing to bring a breach of contract claim against the City and it entered judgment in favor of the City on

17

all counts of the complaint. (Previously, the court had granted summary judgment to the City as to CPRAC's claims under the Takings Clause of the U.S. Constitution and of the Rhode Island Constitution, respectively.) CPRAC appealed the decision, which is currently pending before the Rhode Island Supreme Court.

### C. The Unions' Position

Plaintiffs acknowledge that "this action also involves the unconstitutionality of a Class Action Settlement Agreement, approved by the Rhode Island Superior Court in 2015, which prospectively prohibits bound class members from assisting any party in bringing future legal challenges to RIRSA and its 2015 Amendments." Pltfs.' Mem. at 4 (ECF No. 15). With respect to Count IV, Plaintiffs maintain that they will be unable to obtain complete relief because the Cranston retirees are subject to sanctions if they assist Plaintiffs in prosecuting this action. Id. Plaintiffs further assert that Plaintiffs' claims are not barred by res judicata because the proceedings in state court "involve completely different parties and separate causes of action." Id. 5.

With respect to Counts I through III, the Plaintiffs maintain that they have alleged sufficient facts to establish (1) a contractual right the receipt of pension benefits under the Contracts Clause, (2) protected property and liberty interests

under the Due Process Clause of the Fourteenth Amendment, and (3) protected rights and privileges under the Takings Clause. Id.

## V.   Discussion

### A. Count IV.

The threshold question in every case before this Court is the determination whether the Court has the power to entertain the suit. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To establish standing, the Plaintiffs bear the burden to allege "such a personal stake in the outcome of the controversy" as to justify this Court's exercise of its jurisdiction and the determination of an actual controversy. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703,7 L.Ed.2d 663 (1962). Warth v. Seldin, 422 U.S. at 499 (noting that federal jurisdiction "exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally" and jurisdiction "can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action'".)

Furthermore, it is well established law that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the

19

organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). In order to establish standing, the Plaintiffs must establish that they or their members have suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized...and (b) 'actual or imminent, not conjectural or 'hypothetical.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). However, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." 504 U.S at 563, 112 S.Ct. at 2137.

As stated explicitly by the Union Plaintiffs in their Complaint, they commenced this action "on behalf of, and with the express permission of, their bargaining members." Complaint ¶8. Upon questioning by the Court at the October 6, 2016 hearing, Plaintiffs' counsel clarified that by bringing Count IV, Plaintiffs sought to establish that Cranston police and fire fighter retirees could assist Plaintiffs in this litigation. Although not expressly stated in the Complaint, the Union Plaintiffs now appear to assert a First Amendment right to

associate with the retirees in order to support their members'
claims before this Court. TR 33:14-25. Counsel also candidly
acknowledged that Plaintiffs have no standing to argue the
retirees' own First Amendment rights and that, if Counts I
through III were to fail, Count IV would fail as well. TR
35:11-16.

Notwithstanding Plaintiffs' insistence that they only seek
to assert their own rights to associate with the retirees, the
Complaint seeks a declaration from this Court on whether the
"Settlement Agreement prevents Retired Cranston Public Safety
Officers from joining active public safety officers as
Plaintiffs, or interested parties, in this action," noting that
under the Settlement Agreement, those retirees could be subject
to sanctions. Complaint ¶¶125, 127. In addition, the Complaint
contains numerous allegations related only to the retirees,
including that the retirees were not given an opportunity to
remove themselves from the class or opt out of the Settlement
Agreement, as required by due process, Complaint ¶¶112-113. The
Complaint further asserts that the retirees "have a claim for
monetary damages against Defendants resulting from the illegal
and unconstitutional changes to their pension benefits."
Complaint ¶116.

In addressing the issue of standing, the opposing parties'

arguments suffer from a disconnect. The Unions assert standing on behalf of their active members, based on the contention that those members have "suffered legal prejudice as a result of the Settlement Agreement." Pltfs.' Mem at 22. The State takes the position that the Unions, although they may have standing to sue on behalf of their active members, lack standing to advance claims on behalf of retirees (a contention which has not been refuted by the Plaintiffs, who carry the burden of establishing jurisdiction). The Complaint itself indicates that the Unions are challenging the validity of the Settlement Agreement to spare the retirees from possible sanctions, should the retirees decide to become involved in this litigation (a hypothetical proposition which has been neither asserted nor established).

The proper procedure to challenge the validity of the Settlement Agreement on part of the retirees would have been to file a timely appeal in state court. To the extent the Cranston police and firefighter retirees joined in the appeal of the Settlement Agreement, their challenge is still pending in, and will be determined by, the Rhode Island Supreme Court. To the extent the retirees elected not to file an appeal to the provisions of the Settlement Agreement, the state court's final judgment is binding and this Court has no jurisdiction to conduct a further review.

The Plaintiff Unions, who elected not to participate in the Class Action, have offered no credible basis on which this Court could invalidate the provisions of a resulting Settlement Agreement to which the Plaintiffs are not parties, and which, as the Plaintiffs acknowledge, does not preclude the Plaintiffs themselves from challenging RIRSA in this or any other court. Accordingly, the Court concludes that the Plaintiffs lack standing to seek a declaration on whether the Settlement Agreement, specifically the possibility of sanctions against the retirees under certain circumstances, is valid. Count IV, therefore, is DISMISSED with prejudice.

**B. Counts I through III**

**1. Plaintiffs' Claims against the City**

The City contends that this Court should abstain under _Pullman_ and/or _Colorado River_ and dismiss the Complaint or stay further proceedings until the CPRAC case has been finally adjudicated by the Rhode Island Supreme Court. Cranston Mem. at 8 (ECF No. 13-1). As the First Circuit has instructed, "_Pullman_ abstention serves to 'avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues.'" _Casiano-Montanez v. State Ins. Fund Corp._, 707 F.3d 124, 128 (1st Cir. 2013)(citing _Arizonans for Official English v. Arizona_, 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997);

23

see R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). Federal courts should abstain under Pullman when "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." Casiano-Montanez v. State Ins. Fund Corp., 707 F.3d at 128-129 (citing Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir.2008)). Moreover, if a state proceeding is actually pending, the case for a Pullman abstention is strengthened. Id. (citing Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, 61 (1st Cir.2006); Harris Cnty. Comm'rs Court v. Moore, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975) ("Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, [the Supreme court has] regularly ordered abstention.").

With respect to their claims against the City, the Plaintiffs allege that the City is in violation of the CBAs between the Plaintiff Unions and the City[8], as well as two City Ordinances. Complaint ¶¶24, 28, 34, 38. The Complaint itself avers that the Defendants have violated the Plaintiffs' rights

---

[8]

As noted by the Plaintiffs, the provisions in the current CBAs are "substantially the same" as those for the period of 1995 through 2013. Complaint ¶¶23, 33.

under the Contracts Clause, the Takings Clause and the Due Process Clause, based on the Plaintiffs' asserted rights to certain retirement benefits (including 3% COLAs) under the CBAs at issue as well as under Sections 2.20.050 and 2.28.050 of the City Ordinance.[9]

In the CPRAC case currently pending in the Rhode Island Supreme Court, certain retired Cranston firefighters and police officers (who had excluded themselves from a settlement agreement with the City) have asserted that various CBAs, agreements, and the same sections of the Cranston City Code at issue in this case have substantially impaired their contractual and constitutional rights. CPRAC Complaint (ECF 13-2).

Initially, the state court dismissed CPRAC's claims made under 42 U.S.C.§ 1983 and as to breach of fiduciary duty. Subsequently, the court dismissed all remaining claims except CPRAC's Contract Clause claim in its ruling on the City's summary judgment Motion. (ECF No. 13-5). Following a trial on the remaining Contract Clause claim, the state court determined that Sections 2.20.05 and 2.28.05 did not "violate the contract clauses of either the Rhode Island or United States

---

[9] At the October 6, 2016 hearing, counsel for the Plaintiffs clarified the position that the CBAs and City Ordinance are binding on the City only and that the Plaintiffs' claims against the State were based on the contention that RIRSA and the 2015 Amendments violate the Contracts Clause. TR 53:4-11.

Constitutions."

Although the Plaintiffs now argue that the CPRAC plaintiffs were challenging primarily the discontinuation, delay, or reduction of their 3% COLA under the locally administered pension plan, not the state pension plan, and that the instant case also involves a number of other challenged provisions, both cases depend on the respective plaintiffs' asserted contractual rights to retirement benefits under the CBAs and the City Ordinances. And, although CPRAC is comprised of retirees only and the Plaintiffs in this case are active bargaining unit members, a final determination on that question impacts both sets of plaintiffs.

In the state court's final decision, the court did make a determination that the 1996 City Ordinances confer a contractual right on the CPRAC plaintiffs and that the 2013 City Ordinances constitute a substantial impairment on the contract between the plaintiffs and the City. Those determinations, as well as the state court's ultimate conclusion that the 2013 City Ordinances do not violate the Contract Clauses of the United States Constitution and that of the Rhode Island Constitution, are now awaiting a final review in the Rhode Island Supreme Court. Plaintiffs' instant claims under the Takings Clause and the Due Process Clause, although not asserted in the CPRAC case, also

depend on a determination of alleged constitutionally protected property rights, which is the pivotal issue in the CPRAC case as well. Under those circumstances, the Court is of the opinion that abstention is warranted and that the Rhode Island Supreme Court should decide what, if any, contractual rights the CBAs and Cranston City Ordinances confer on the Plaintiffs. Accordingly, Counts I through III, as they relate to the City, are DISMISSED without prejudice.

### 2. Plaintiffs' Claims against the State

The Plaintiffs allege that the State's enactment of RIRSA and the 2015 Amendments deprive the Plaintiffs of their contractual rights to retirement benefits as they existed prior to RIRSA's enactment and that of the 2015 Amendments[10], in violation of the United States Constitution.

The Contract Clause provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. It is well established that "[a]lthough the

---

[10]

The Court notes that, in light of the 2015 Amendments, a challenge to the constitutionality of RIRSA may be moot, a determination which the Plaintiffs have previously acknowledged in the related state court litigation. See, e.g., Boyer v. Bedrosian, 57 A.3d 259, 272 (R.I.2012)(noting that "the passage of a new law or an amendment to an existing law may moot a case.")(citing Midwest Media Property, L.L.C. v. Symmes Township, Ohio, 503 F.3d 456, 460 (6th Cir.2007) (citing Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969)).

original intent of this language was to bar retroactive laws (particularly debtor relief laws) that would impair private contractual rights, the clause has long been interpreted to apply to public contracts as well." Parella v. Retirement Bd. of Rhode Island Employees' Retirement System, 173 F.3d 46, 59 (1st Cir.1999) (citing Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 137-39, 3 L.Ed. 162 (1810)).

In order to state a plausible claim under the Contract Clause, the Plaintiffs must assert the "substantial impairment of a contractual relationship." General Motors Corp. v. Romein, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). To establish whether a state law has resulted in the substantial impairment of a contractual relationship, a court must determine whether (1) there is a contractual relationship; (2) a change in law impairs that contractual relationship; and (3) the impairment is substantial. Romein, 503 U.S. at 196, 112 S.Ct. 1105. Only if each of these questions is answered in the affirmative, does the court proceed to determine whether "the impairment is nonetheless justified as 'reasonable and necessary to serve an important public purpose.'" Parella, 173 F.3d at 59 (citing United States Trust Co. v. New Jersey, 431 U.S. 1, 25, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).

28

As already stated herein, the determination of whether the CBAs and/or the City Ordinances confer contractual property rights to certain retirement benefits on the Plaintiffs is a question that is currently being challenged in the Rhode Island Supreme Court. Although the state trial court in <u>CPRAC</u> did conclude that such rights exist and that they were substantially impaired by the state statute, the court ultimately concluded that the impairment was justified. All those determinations are now the subject of the retired Cranston safety officers' appeal to the Rhode Island Supreme Court, which may or may not uphold the state court's determinations. Because this Court has resolved to abstain from ruling on the Plaintiffs' assertion of contractual rights under the CBAs and/or the City Ordinances, Plaintiffs' Contract Clause claims, as well as those brought under the Due Process Clause and the Takings Clause, cannot proceed until the Rhode Island Supreme Court makes its ruling.

As to the Plaintiffs' suggestion that their contractual rights were created by Rhode Island's pension statutes, that contention has previously been rejected by this Court in a case challenging the state's statutory retiree health benefit scheme. <u>Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO v. Rhode Island</u>, 705 F.Supp.2d 165 (D.R.I. April 13, 2010)(holding that change in Rhode Island statutory retiree health benefit scheme did not

create a contractual obligation on part of the state). In order to establish that a state statute creates a contract, a plaintiff must overcome "the strong presumption against interpreting statutes as contractual agreements. <u>Id.</u> at 178 (citing <u>Nat'l Educ. Ass'n-R.I. v. Ret. Bd. of R.I. Employees' Ret. Sys.</u>, 890 F.Supp. 1143, 1153 (D.R.I.1995)).

The First Circuit has concluded that Rhode Island's general pension statute does not "'clearly and unequivocally' contract[] for future benefits either by language or—in the circumstances of this case — through the nature of the relationship." <u>Nat'l Educ. Ass'n-Rhode Island ex rel. Sciqulinsky v. Ret. Bd. of Rhode Island Employees' Ret. Sys.</u>, 172 F.3d 22, 28 (1st Cir.1999)(noting that "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' <u>Dodge v. Board of Educ.</u>, 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937)"). Accordingly, "[t]he party asserting the creation of a statutory contract must prove that the legislation is 'intended to create private contractual or vested rights' and not merely declaratory of a policy to be pursued until the legislature ... ordains otherwise. <u>Rhode Island Council 94 v. Rhode Island</u>, 705 F.Supp.2d at 178

(quoting <u>Nat'l Educ. Ass'n-Rhode Island ex rel. v. Ret. Bd. of the Rhode Island Employees' Ret. Sys.</u>, 172 F.3d 22, 28 (1st Cir.1999)  quoting <u>Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.</u>, 470 U.S. 451, 466, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985)). Put another way, the statute must be "unmistakably clear on this point" and "there must be no ambiguity in what the legislature intends." <u>Id.</u> at 178.

The Plaintiffs have not pointed to any provisions in the Rhode Island retirement statutes that would demonstrate an unmistakable intent on part of the legislature to establish a contractual right to pension benefits. Rather, the Plaintiffs suggest that they may possess implied unilateral contract rights arising from an implied-in-fact contract between the Plaintiffs and the State. TR 43:13-44:24. However, as noted by this Court at the October 6, 2016 hearing, a ruling to that effect by a Rhode Island state court, on which the Plaintiffs rely in their argument, did not constitute a ruling on the merits and, therefore, it has no precedential value. <u>Id.</u> 44:25-45:7. Accordingly, the Court is of the opinion that Plaintiffs' constitutional claims, insofar as they are based on alleged contractual rights conferred by state statute, are insufficient to withstand Defendants' motion to dismiss the Complaint.

**IV. Summary**

After discovering that the City's pension fund was endangered by an ever expanding unfunded pension liability, the City engaged in a number of steps to address the problem.[11] One of the solutions conceived by the City was to enroll its public safety employees in the state pension system (or permit employees with fewer than five years of service to transfer into the system). Since the enactment of RIRSA in 2011, the Plaintiffs, along with other unions and retiree associations, have mounted several challenges to RIRSA under the Rhode Island Constitution in state courts. For the most part, that litigation was settled, although the Plaintiff Unions have continued to challenge the loss of their members' benefits under RIRSA and its 2015 Amendments.

In 2013, the City implemented two City Code ordinances which have since been challenged in state court and which are also at issue in the instant case. Although two of the state court cases resulted in settlements, litigation is being continued by a group of retired City fire fighters and police officers.

The Plaintiffs, understandably disappointed at the reduction of generous retirement benefits provided for in various CBAs

---

[11]

For a detailed description and analysis of the City's budgetary woes, see Cranston Police Retirees Action Committee v. City of Cranston, No. KC10131059, 2016 WL 4059309 (R.I. Super., July 22, 2016).

preceding implementation of RIRSA, are now seeking to invalidate RIRSA and its 2015 Amendments by bringing a case in this Court. Although the Plaintiffs in this case are not identical to those participating in previous legal challenges to RIRSA and the legal arguments vary, the essential claims aim to restore benefits on behalf of municipal safety officers and/or retirees that were reduced in order to address a growing shortfall in municipal pension funds. Currently, a group or retirees is continuing to challenge the reduction of such benefits, specifically the loss of a 3% COLA, in state court, see CPRAC. A final determination in that case would be instructive in the instant case: whether CBAs and City Ordinances confer constitutionally protected property rights on Plaintiffs and, if that were to be answered in the affirmative, whether such rights have been violated by RIRSA, as amended.

Another group of retirees[12] currently receives benefits under a separate Settlement Agreement, from which they do not appear to have taken an appeal, thus barred by both the terms of the agreement and by *res judicata*. Plaintiffs in the instant case now seek to involve these retirees in the instant litigation through what amounts to a collateral challenge of the final state

---

[12]

It is unstated whether there is any overlap of plaintiffs in the two cases currently before the Rhode Island Supreme Court.

court judgment.

As set forth herein, the Court is of the opinion that, as to Counts I, II, and III of the Complaint, abstention is warranted to await the Rhode Island Supreme Court's final word in <u>CPRAC</u> to the extent the Plaintiffs rely on the CBAs and/or City Ordinances to establish a constitutionally protected property right. Insofar as the Plaintiffs rely on Rhode Island pension statutes to create such contractual rights, the Court holds that such reliance is misplaced. Furthermore, the Plaintiffs' lack of standing to challenge the provisions of a final Settlement Agreement in state court, to which only the retiree class members were parties, warrants the dismissal of Count IV.

## Conclusion

For the reasons stated herein, the Defendants' Motions to dismiss the Complaint are GRANTED as follows: Counts I, II, and III of the Complaint are DISMISSED without prejudice. Count IV is DISMISSED with prejudice.

SO ORDERED.

<u>/s/ Mary M. Lisi</u>
Senior United States District Judge
March 7 , 2017

34